# United States Court of Appeals for the Federal Circuit

2009-7099


REIDA J. BASTIEN,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.


Douglas J. Rosinski, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., of Columbia, South Carolina, argued for claimant-appellant.

Hilliary A. Stern, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director. Of counsel on the brief was David J. Barrans, Deputy Assistant General Counsel, Office of General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Chief Judge William P. Greene, Jr.

# United States Court of Appeals for the Federal Circuit

2009-7099

REIDA J. BASTIEN

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 06-3428, Chief Judge William P. Greene, Jr.

_____

DECIDED:  March 24, 2010

_____

Before NEWMAN, FRIEDMAN, and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge FRIEDMAN.  Dissenting opinion filed by Circuit Judge NEWMAN.

FRIEDMAN, Circuit Judge.

This appeal challenges the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court"), affirming the decision of the Board of Veterans' Appeals ("Board"), that the death of the appellant Reida J. Bastien ("Mrs. Bastien")'s husband, Robert W. Bastien ("Mr. Bastien"), did not result from his military service.  We conclude that all but one of these substantive contentions involve factual issues that we have no jurisdiction to review and that a recent decision of this court requires rejection of her remaining contention.  We also reject the claim that the Veterans Court

improperly struck the initial version of her opening brief for violating its procedural rule prohibiting the citation of its nonprecdential opinion.  We therefore affirm.

I

A.   During his military service from May 1972 to May 1976, Mr. Bastien had worked at a university radiation facility, where he participated in experiments testing the effects of radiation on monkeys.  He placed the monkeys in the reactor before they were exposed to radiation and retrieved them after the exposure.  Personnel within the reactor facility were required to wear a dosimeter badge to monitor radiation exposure during work.  He was assigned to work in the reactor facility for at least thirty-one days.

In 1995, Mr. Bastien died of pneumonia resulting from Waldenström's macroglobulinemia, a rare blood cancer.  He was diagnosed with other rare forms of lymphoma, including non-Hodgkin's lymphoma.

Shortly before his death, he filed a claim for compensation with the Department of Veterans Affairs ("Department") for "lymphoma" caused by exposure to ionizing radiation during his military service, from both his time at the reactor facility and from in-service sinus x-rays he received in 1972.  After his death, Mrs. Bastien applied for dependency and indemnity compensation, and for educational benefits for her children, on the same basis.

B.  The procedural history of Mrs. Bastien's claim is convoluted.  The case went before the Board and the Veterans Court several times.  In its final decision, the Board denied her claim, finding that the preponderance of the evidence did not establish that her husband's death was attributable to radiation exposure during his military service.

The evidence before the Board was conflicting. Mrs. Bastien submitted reports from two physicians. Dr. Hall, a clinical faculty member of the Medical University of South Carolina Hollings Cancer Center, stated that "there has been a reported case of Waldenström's [m]acroglobulinemia in a patient treated with radiation therapy" and that Mrs. Bastien's "husband's cancer, therefore, could be related to radiation exposure." The other physician, Dr. Weiss, a Department employee, concluded that "it is plausible that low dose radiation exposure by the veteran "'may [have] been causal in his development of Waldenström's macroglobulinemia,'" and that "a radiation badge may be insensitive to chronic low dose radiation," which could "account for the absence of an accumulated dose of radiation for the veteran."

In addition to these two physicians' reports, Mrs. Bastien presented her own estimate of the amount of radiation her husband had received. Her estimate, which she subsequently updated, was based on "[her] math knowledge . . . research fundamentals and known facts." (Emphasis omitted). Her studies concluded that her husband had received substantially more radiation than the physicians' reports had indicated. She also concluded that, based on the radiation dosage she had calculated, some experts would agree that such exposure would cause three out of 10,000 individuals to develop cancer. Mrs. Bastien also submitted a letter from a private nuclear engineering company, the Delphi Groupe, Inc., which stated that Mrs. Bastien may have overestimated her husband's radiation exposure and thus should rely instead on the opinions of Drs. Hall and Weiss.

The Department submitted reports by two other physicians it employed. Dr. Mather, its Chief Public Health and Environmental Hazards Officer, stated that "[i]n light

of the veteran's low reported radiation dose and uncertainty about the risk of plasma cell malignancies after radiation exposure . . . it is unlikely that the veteran's Waldenström's macroglobulinemia can be attributed to exposure to ionizing radiation in service." Dr. Mather also stated that it was "not possible" for her office to provide "an independent" estimate of the amount of radiation Mr. Bastien had received. (A Department regulation provides for the Department to prepare, in radiation exposure cases, "a dose estimate, to the extent feasible, based on available methodologies." 38 C.F.R. § 3.311.)

Dr. Pasquale, a hematologist, who was also an associate professor of medicine at Albany Medical College, summarized in detail "selected published data from peer reviewed journals that address the risk of developing NHL and WM [non-Hodgkin's lymphoma and Waldenström's macroglobulinemia] following radiation exposure." He stated that "[b]ased on the above data, I must conclude that this veteran's radiation exposure is extremely unlikely to have caused his cancer."

The Board "conclude[d] that, for the purpose of this decision, the veteran's in-service duties included exposure to ionizing radiation." After a fairly detailed summary and discussion of the evidence, the Board "conclude[d]" that

> the December 1998 opinion of the physician designee of the VA [Department] Under Secretary for Health [Dr. Mather] that "it was unlikely" that the veteran's Waldenstrom's macroglobulinemia could be attributed to exposure to ionizing radiation inservice [sic] in light of the low reported dose, and to the September 1999 opinion [of Dr. Pasquale] that the veteran's radiation exposure was "extremely unlikely" to have caused his cancers are of greater probative value than the June 1995 opinion from Dr. Hall, the January 1996 opinion from a VA physician [Dr. Weiss], or the April 2002 opinion from the Delphi Groupe, Inc.

"The Board reached this conclusion because . . . the opinions relied on by the widow were based on a review of something less than a review of all of the evidence, and they included conditional phrases like 'could be,' 'may be,' 'it was plausible,' 'lent credence to the possibility,' and/or 'would make it difficult to refute.'"

The Board stated that "even assuming that the veteran was exposed to some level of ionizing radiation while on active duty, service connection cannot be granted . . . because the preponderance of the competent evidence is against finding a nexus between any such exposure and these claimed disabilities."

The Board stated that in so concluding it had "not overlooked the widow's and her representative's written statements to the [Regional Office] as well as the hearing testimony. While lay witnesses can testify as to the visible symptoms or manifestations of a disease or disability, lay statements as to the origins of the veteran's disabilities are not probative because lay persons are not competent to offer medical opinions. Likewise, while it is argued that the voluminous medical literature provided by the claimant is supportive of the claim, generic texts, which do not address the facts in this particular claimant's case, and with a sufficient degree of medical certainty, do not amount to competent medical evidence of causality. Therefore, the Board assigns more weight to the objective medical evidence of record as outlined above." (Internal citations omitted).

In affirming, the Veterans Court stated that "[i]t is the Board's responsibility, not this Court's, to review and assess the credibility and probative value of the evidence of record." The court held that the Board had "considered and weighed the dose estimates submitted by Mrs. Bastien," but "rather than accepting her dose estimates,

the Board relied on dose estimates provided by VA experts that were factually supported by the record. R. at 404, 425-41, 463, 524-35. The board found Mrs. Bastien's dose estimates not probative because she was not competent to offer such evidence. R. at 18. The Board's reasons and bases for relying on dose estimates provided by VA experts rather than Mrs. Bastien are plausible and therefore not clearly erroneous." The court further stated that "[i]t is the responsibility of the Board to weigh the evidence, including medical evidence, and to determine where to give credit and where to withhold the same. Evans v. West, 12 Vet. App. 22, 30 (1998). Pursuant to this duty, the Board may accept one medical opinion and reject others." The court concluded that the Board justifiably had "found the medical opinions of Drs. Mather and Pasquale more probative" than the medical opinions of the physicians upon which Mrs. Bastien relied.

II

Unless an appeal from the Veterans Court "presents a constitutional issue," this court "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2). In other words, except for constitutional issues, this court has no jurisdiction to review the Veterans Court's factual determinations. See Johnson v. Derwinski, 949 F.2d 394, 395 (Fed. Cir. 1992).

Except for the issue discussed in Part III below, Mrs. Bastien's other substantive contentions raise only factual questions. The two underlying issues before the Board were (1) how much radiation Mr. Bastien had received during his military service and (2) whether such radiation was the likely cause of his cancer. The evidence on both was

conflicting and, as the Veterans Court properly pointed out, it was the Board's responsibility to resolve those factual disputes.

Mrs. Bastien's basic argument is that the Board gave too much weight to the expert opinions of the Department's witnesses and insufficient weight to her expert witnesses and other evidence. Although she frames her argument as a challenge to the Board's failure to consider her evidence, we have pointed out above that the Board fully and adequately considered and discussed all the relevant evidence in the case, including Mrs. Bastien's. Mrs. Bastien's assertion that the Board did not consider her evidence thus necessarily was a contention that it did not give that evidence the weight she believed it should have received.

The evaluation and weighing of evidence and the drawing of appropriate inferences from it are factual determinations committed to the discretion of the fact-finder. We lack jurisdiction to review these determinations.

III

The only substantive issue we have jurisdiction to review is Mrs. Bastien's contention that the Board improperly relied on the Department's medical witnesses because it did not affirmatively establish their qualifications as medical experts. Our recent decision in Rizzo v. Shinseki, 580 F.3d 1288 (Fed. Cir. 2009), is controlling on this point and requires rejection of Mrs. Bastien's contention.

The question in Rizzo was whether Rizzo's eye diseases were caused by his exposure to ionizing radiation during his military service. The expert medical opinion on this issue was in conflict and the Board gave greater weight to the Department's expert's opinion. Id. at 1290. Rizzo argued that the Department had erred because it

did not affirmatively establish the physician's qualifications to provide such expert evidence. Id. This court rejected that contention. It stated:

> Absent some challenge to the expertise of a VA expert, this court perceives no statutory or other requirement that VA must present affirmative evidence of a physician's qualifications in every case as a precondition for the Board's reliance upon that physician's opinion. Indeed, where as here, the veteran does not challenge a VA medical expert's competence or qualifications before the Board, this court holds that VA need not affirmatively establish that expert's competency.

Id. at 1291.

Thus, under Rizzo, the Board is not required to "present affirmative evidence of a physician's qualifications in every case as a precondition for the Board's reliance upon that physician's opinion." Id.

Mrs. Bastien attempts to distinguish Rizzo on the ground that, unlike in that case, here she did "challenge a VA medical expert's competence or qualifications before the Board." The record does not support this claim.

Mrs. Bastien took two actions relating to the qualifications of the Department's medical experts. First, she asked the Department to state Dr. Mather's "qualifications (degrees and certifications)," which the Department did. A request for information about an expert's qualifications, however, is not the same as a challenge to those qualifications. Indeed, one may assume that litigants who are told an expert witness' qualifications frequently may conclude that there is no reasonable basis for challenging those qualifications.

Mrs. Bastien's second action was a letter to the Department challenging Dr. Pasquale's medical opinion, on the ground that he was not an independent medical

expert because he was employed by the Department. This challenge questioned not his medical competence or expertise, but rather his objectivity. Indeed, if a physician's employment with the Department precluded his acting as an expert witness before the Board, it also would appear to disqualify Mrs. Bastien's own medical expert, Dr. Weiss, who also was a Department employee. The Department, however, is explicitly and implicitly authorized to use its own employees as experts. See 38 U.S.C. §§ 5103A(d), 7109(a); 38 C.F.R. § 20.901.

There is a sound practical reason why any challenge "to the expertise of a VA expert" (Rizzo) must set forth the specific reasons why the litigant concludes that the expert is not qualified to give an opinion. Unless there is such particularization, the trier of facts is unable to evaluate and determine the validity of the challenge to the expert's qualifications. The effect of treating Mrs. Bastien's allegations as sufficient to require the Department affirmatively to establish the physician's expertise would be to vitiate the holding in Rizzo that ordinarily the Department "need not affirmatively establish that expert's competency."

IV

Rule 30(a) of the Veterans Court's Rules of Practice and Procedure provides, in pertinent part, that a party "may not cite as precedent any action designated as nonprecedential by the Court." In two footnotes in her opening brief before that court, Mrs. Bastien cited nonprecedential decisions of that court. On the government's motion, the Veterans Court struck that brief and directed Mrs. Bastien to "file a brief which complies with the rules of the Court" within thirty days.

Mrs. Bastien challenges that order, contending that her brief complied with the rule because she cited the two nonprecedential decisions not "as precedent" but only for the factual information they contained. She apparently filed such a corrected brief and does not contend or attempt to show that she suffered any prejudice from the order.

The Veterans Court has broad discretion to interpret and apply its Rules of Practice and Procedure. See Carbino v. West, 168 F.3d 32, 35 (Fed. Cir. 1999). The Veterans Court ruling involved either an application of its rule to the facts of Mrs. Bastien's case, which we have no jurisdiction to review, or an interpretation of the rule, which was neither clearly erroneous nor an abuse of discretion.

## CONCLUSION

The judgment of the Veterans Court is

AFFIRMED.

# United States Court of Appeals for the Federal Circuit

2009-7099

REIDA J. BASTIEN,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 06-3426, Chief Judge William P. Greene, Jr.

NEWMAN, <u>Circuit Judge</u>, dissenting.

From the record before the Veterans Court, the cause of Waldenstrom's macroglobulinemia is not known; indeed, the cause of most cancers does not appear to be known, despite advances of science.

A physician at the Hollings Cancer Center of the Medical University of South Carolina stated that the rare cancer that killed Mr. Bastien was known to have appeared in a patient treated with radiation, and all of the medical witnesses, whichever side retained them, stated that it was not possible to know whether Mr. Bastien's macroglobulinemia cancer was traceable to his military assignment as a technician administering radiation

tests to monkeys. The witnesses attempted to estimate the extent of his radiation exposure, offered various opinions as to the likelihood that this exposure led to this rare cancer, and acknowledged the uncertainties of such views.

If the proper legal standard for determining service connection is whether this radiation exposure was "more likely than not" to have caused this rare cancer, I agree that the sparse evidence and speculative medical opinions do not satisfy that standard. However, I suggest that the correct standard for rare diseases in such situations, on application of the statutory policy governing veterans' benefits, is not whether a preponderance of evidence establishes that causation was more likely than not, but whether it is medically possible that the in-service activity caused the cancer. Such a standard is appropriate when the disease is sufficiently rare that adequate data to prove or disprove causation do not exist. In such case, when qualified witnesses state that the specific exposure "possibly" caused the disease, and no evidence suggests any other cause, national policy is served by deeming the burden to have been met.

The precedent on which the Board and the Veterans Court relied arose from diseases for which there is sufficient medical knowledge that a "more likely than not" standard of proof is reasonable. However, the statute governing veterans' claims adjusts the burdens so that doubt is resolved in favor of the veteran. Applying this guidance to rare diseases where there is insufficient data and experience to establish a reliable etiology of the disease, the reasonable standard is whether the service activity could "possibly" have caused the disability or death, rather than whether it was more likely than not to have caused the disability or death. This standard best implements the legislative policy. I would remand for redetermination on this basis.