Citation Nr: 1607904 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 08-28 136 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, Mississippi


THE ISSUES

1. Entitlement to a compensable disability rating for bilateral hearing loss on an extraschedular basis.

2. Entitlement to compensation under 38 U.S.C.A. § 1151 for drug-induced discoid lupus erythematosus.

3. Entitlement to service connection for a right foot/toe disability.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

M. McPhaull, Counsel


INTRODUCTION

The Veteran had active service from April 1974 to March 1976.

This appeal to the Board of Veterans' Appeals (Board) initially arose from a March 2008 rating decision in which the RO, inter alia, continued a noncompensable disability rating for bilateral hearing loss. Following an appeal, the Board, inter alia, denied the Veteran's claim for a compensable rating for bilateral hearing loss in April 2015.

The Veteran appealed the Board's April 2015 decision to the United States Court of Appeals for Veterans Claims (Court). In an October 2015 Joint Motion for Partial Remand (JMPR), the parties agreed that the Board's decision should be vacated regarding the issue of entitlement to a compensable disability rating for bilateral hearing loss on an extraschedular basis. In October 2015, the Court vacated the Board's April 2015 decision and remanded this claim to the Board for action consistent with the JMPR. That portion of the Board's decision which involved adjudicating the disability rating for the Veteran's service-connected bilateral hearing loss on a schedular basis and the other issues adjudicated by the Board in its April 2015 decision was not disturbed.

While the Veteran had a private attorney representing him before the Court, the November 2014 VA Form 21-22 (appointing Disabled American Veterans (DAV) as the Veteran's representative in all of the matters pending before the Board) remains in effect. The Veteran has not stated any desire to change his representation before the Board. Thus, the Veteran has the same representative for the issues addressed in this decision.

The Board notes that, in addition to the paper claims file, there are paperless, electronic Virtual VA and Veteran Benefits Management System (VBMS) files associated with the Veteran's claims. A review of the documents in both Virtual VA as well as VBMS reveals the October 2015 JMPR and Order as well as additional pertinent adjudication actions that will be discussed in the REMAND below.

The Veteran's claim of entitlement to compensation under 38 U.S.C.A. § 1151 for drug-induced discoid lupus erythematosus and service connection for a right foot/toe disability are addressed in the REMAND portion of this decision and are REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


FINDINGS OF FACT

1. The record evidence shows that the Veteran's service-connected bilateral hearing loss is manifested by hearing impairment with concomitant communication difficulties but does not present such an exceptional or unusual disability picture as to render impractical the application of the schedular criteria. 

2. The record evidence shows that the Veteran's reported dizziness, itching/swelling, and draining in both ears have not been adjudicated as manifestations of his service-connected bilateral hearing loss and these symptoms also do not result in related factors such as marked interference with employment or frequent periods of hospitalization.


CONCLUSION OF LAW

The criteria for entitlement to a compensable disability rating for bilateral hearing loss on an extraschedular basis have not been met. 38 U.S.C.A. §§ 501, 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321(b), 4.3, 4.85, 4.86, Diagnostic Code (DC) 6100 (2015). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board notes initially that the issue of whether VA has satisfied its duties to notify and assist the Veteran under the Veterans Claims Assistance Act of 2000 (VCAA) is moot. See 38 U.S.C.A §§ 5103, 5103A (West 2014); 38 C.F.R. §§ 3.159, 3.326(a), 3.327 (2015). The October 2015 JMPR limited the appeal to the issue of whether referral for extraschedular consideration is warranted, specifically finding that the Board had not explained adequately its reasons for not referring this claim based on the evidence currently of record. The JMPR also did not contest the Board's April 2015 denial of a compensable disability rating for the Veteran's service-connected bilateral hearing loss on a schedular basis, including the Board's findings that VA had met its duties to notify and assist the Veteran under the VCAA. Those findings are incorporated into this decision by reference. There is no argument or indication that the record is not developed adequately to determine whether the Veteran's service-connected bilateral hearing loss is exceptional or unusual vis-à-vis the schedular criteria. See 38 C.F.R. § 3.321 (2015). The difficulties associated with the Veteran's service-connected bilateral hearing loss are documented amply by the evidence of record. There is no reasonable possibility that further assistance would support referral for extraschedular consideration. See also 38 C.F.R. § 3.159(d). Accordingly, the Board will proceed with appellate review. 

Both parties to the October 2015 JMPR agreed that the Board did not provide an adequate statement of reasons or bases for finding that various difficulties associated with the Veteran's service-connected bilateral hearing loss (as reported by him) did not establish an exceptional or unusual disability picture in relation to the rating criteria such that referral for extraschedular consideration is warranted. See 38 C.F.R. § 3.321(b); see also 38 U.S.C.A. § 7104(d)(1) (West 2014); Allday v. Brown, 7 Vet. App. 517, 527 (1995). Specifically, both parties to the JMPR agreed that the Board's finding that the Veteran's hearing impairment was contemplated by the rating criteria, which are based on testing results (see 38 C.F.R. § 4.85 (2015)), was not a sufficient statement of reasons or bases for declining to refer the case for extraschedular consideration. Both parties to the JMPR asserted that the Board had not explained in its April 2015 decision whether the Veteran's complaints pertaining to dizziness, itching, swelling, or discharge of the ears, as well as difficulty hearing his family, certain sounds, and pitches were contemplated by 38 C.F.R. § 4.85. See also 38 U.S.C.A. § 7104(d)(1).

The noncompensable disability rating assigned for the Veteran's service-connected bilateral hearing loss does not warrant referral for extraschedular consideration. See 38 C.F.R. § 3.321(b); Thun v. Peake, 22 Vet. App. 111, 114 (2008); aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The Board notes in this regard that, because the ratings provided under Schedule for Rating Disabilities are averages, an assigned rating may not account completely for each individual Veteran's circumstances but is nevertheless adequate to address the average impairment in earning capacity caused by the disability. See Thun, 22 Vet. App. at 114; see also 38 C.F.R. § 4.1 (2015) (finding the percentage ratings under the rating schedule represent the average impairment in earning capacity from service connected disabilities). In exceptional situations where the rating is inadequate, it may be appropriate to refer the case for extraschedular consideration. Thun, 22 Vet. App. at 114. The governing norm in these exceptional cases is a finding that the disability at issue presents such an exceptional or unusual disability picture, with such related factors as marked interference with employment or frequent periods of hospitalization, as to render impractical the application of the regular schedular standards. Id.; See also 38 C.F.R. § 3.321(b)(1). These criteria have been broken up into a three-step inquiry: (1) the schedular criteria must be inadequate to describe the claimant's disability level and symptomatology; (2) there must be related factors such marked interference with employment or frequent periods of hospitalization; and (3) if so, then the case must be referred to the Under Secretary for Benefits or the Director, Compensation Service, for a determination of whether the claimant's disability picture requires the assignment of an extraschedular rating. See Thun, 22 Vet. App. at 114.

Here, a comparison of the Veteran's hearing loss and associated functional impairment with the schedular criteria does not show "such an exceptional or unusual disability picture . . . as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b). The Veteran's hearing loss and functional impairment are contemplated by 38 C.F.R. § 4.85, DC 6100. Although the rating criteria applicable to hearing loss are not cast in terms of symptoms or functional impairment but rather are based on the numerical results of objective audiological testing used to measure the degree of hearing loss, they are necessarily designed with a view toward compensating for the symptoms and functional impairment associated with hearing loss. See 64 Fed. Reg. 25209 (May 11, 1999). In this regard, all schedular criteria are meant to take into account the average impairment in earning capacity resulting from service-connected disabilities. See 38 C.F.R. § 4.1. The basis is one's ability to function under the ordinary conditions of daily life, including employment. See 38 C.F.R. § 4.10 (2015); see also 38 C.F.R. § 4.21 (2015) ("[c]oordination of rating with impairment of function will...be expected in all instances"). 

Viewed in this light, although a particular DC may provide for evaluations of a disability in terms of objective clinical data rather than in terms of symptoms or functional impairment, as is the case with hearing loss disabilities, the purpose of the schedular ratings with their corresponding criteria is necessarily to provide compensation for the symptoms and functional impairment caused by the disability in question, particularly with regard to how they affect earning capacity. See 38 C.F.R. §§ 4.1, 4.10, 4.21 (2015). Thus, the Veteran's difficulty hearing and the consequences that may flow from this difficulty such as difficulty hearing his family as well as certain sounds and pitches are necessarily the type of symptomatology and functional impairment contemplated by the rating criteria for hearing loss. 

The regulatory history further shows that the rating criteria already contemplate the effects of hearing impairment, even if they are not discussed in the DC itself. For example, as discussed in the commentary accompanying publication of 38 C.F.R. § 4.86(b), the alternative criteria in this subsection for evaluating hearing loss are designed to account for a pattern of hearing impairment that is an extreme handicap in the presence of any environmental noise. See 64 Fed. Reg. 25209 (May 11, 1999). Similarly, the publication of the proposed rule for current 38 C.F.R. § 4.86(a) (then § 4.85(d)), reflects that the alternative criteria in this subsection are designed for a pattern of hearing loss (55 decibels or higher in four of five specified frequencies) respecting which speech discrimination results on testing in a controlled setting might not reflect the true extent of difficulty understanding speech in the everyday work environment. See 59 Fed. Reg. 17295, 17296 (April 12, 1994). Thus, the Veteran's report of having difficulty hearing with certain sounds and pitches already is contemplated by the rating criteria, and specifically by § 4.86(b), as discussed in the commentary published in the Federal Register. Id.

Accordingly, the fact that the rating criteria do not mention specific examples of symptoms or functional impairment experienced by the Veteran as a result of hearing loss cannot be a basis by itself for extraschedular referral, when it can be inferred reasonably that these criteria already contemplate a wide range of impairment. See Bastien v. Shinseki, 599 F.3d 1301, 1306 (Fed. Cir. 2010) ("The evaluation and weighing of evidence and the drawing of appropriate inferences from it are factual determinations committed to the discretion of the fact finder.").

Moreover, the fact that circumstances specific to a claimant may cause the effects of a service-connected disability to be more profound in that claimant's case does not by itself provide a basis for extraschedular referral. See VAOPGCPREC 6-96 (August 16, 1996). The fact that a disability interferes with employment "cannot constitute an 'exceptional or unusual' circumstance rendering application of the rating schedule impractical." Id. In this regard, the rating schedule itself is based upon the average impairment of earning capacity due to service connected disability, and thus "application of the rating schedule clearly recognizes that the rated disability interferes with employment. Id.; see also 38 C.F.R. § 4.1 (providing, in relevant part, that the degrees of disability specified in the rating schedule are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability, and that the percentage ratings represent, as far as practicably can be determined, the average impairment in earning capacity resulting from service-connected diseases and injuries and their residual conditions in civilian occupations). Indeed, in Thun, the Court held that the Board's finding that the rating criteria were adequate to evaluate the claimant's disability was a sufficient basis for denying extraschedular consideration without regard to whether there was marked interference with employment. See 22 Vet. App at 118-19. Thus, the Court found that whether the Board provided an adequate statement of reasons or bases regarding whether the disability resulted in marked inference with employment was moot, since the first step of the inquiry, an exceptional or unusual disability picture, was not satisfied. Id. 

Instances where a disability may be exceptional or unusual might include a complex or unusual disease that is not adequately represented by the criteria in the rating schedule, or, as VA's General Counsel noted, where medications that a claimant must take for a service-connected disability cause additional impairment due to side effects that are not contemplated by the applicable rating criteria. See VAOPGCPREC 6-96 (August 16, 1996). 

By contrast, various situational difficulties occasioned by the disability, or specific examples of functional impairment, as opposed to signs or symptoms of the disability itself and their immediate effects on functioning (as, for example, limited range of motion of the knee due to arthritis), cannot be a basis alone for extraschedular consideration. Otherwise, for example, the fact that a claimant's right knee or back disability limited or prevented use of a lawn mower, a claimant's visual impairment prevented driving, or that a claimant's hand disability limited or prevented playing the piano, would satisfy the first step of the inquiry automatically, since neither challenge or limitation is mentioned in the rating criteria. Indeed, under VAOPGCPREC 6-96, even if a claimant made a living as a piano instructor or musician, the disproportionate effect of a service connected hand disability on that claimant as opposed to a claimant who did not depend on fine motor use of the hand, but could otherwise use the hand for most purposes, still would not be a basis for extraschedular referral, as individual circumstances (i.e. those not proper to the signs or symptoms of the disability itself) cannot be taken into account in making this determination. 

If external situational difficulties occasioned by the disability were sufficient to establish an exceptional or unusual disability picture because not mentioned by the rating criteria, then almost any example of functional impairment or any situational difficulty would result in a finding of an exceptional or unusual disability picture. The rating schedule is almost devoid of specific examples of functional impairment or challenges imposed by the conditions listed there, notwithstanding the fact that functional impairment is itself always the basis for, or at least one of the necessary foundations of, the schedular criteria. Because many disabilities also would be found to cause marked interference with employment, this would result in more or less automatic referral for extraschedular consideration of perhaps a majority of disabilities. Such an absurd result inverts the basic structure of a rating schedule for the majority of cases. 

In short, based on 38 C.F.R. § 3.321(b), Thun, and VAOPGCPREC 6-96, the Board concludes that situational difficulties or circumstantial challenges alone imposed by the disability cannot be the only basis for finding that the disability presents an exceptional or unusual disability picture. Rather, only when external situational difficulties or circumstances show that the disability itself results in impairment different from, or more severe than, what is contemplated by the schedular criteria such as to render their application impractical rather than simply warranting a higher schedular rating, and without regard to circumstances unique to the claimant such as educational background or his or her particular occupation, would an "exceptional or unusual" disability picture be established in relation to such criteria.

With this framework in mind, the Board turns to the facts of this case. On the one hand, there are schedular criteria for evaluating hearing loss that are purely numerical and based on objective testing results. See 38 C.F.R. §§ 4.85, 4.86. On the other hand, there is the Veteran's account of various difficulties (difficulty hearing his family, difficulty with hearing certain sounds, and difficulty with certain pitches) which he associates with his service-connected bilateral hearing loss. None of these reported difficulties are mentioned in the rating criteria for evaluating hearing loss. For the following reasons, the Board finds that the Veteran's difficulties which he attributes to his service-connected bilateral hearing loss either are contemplated by the rating criteria for evaluating hearing loss or do not show impairment different from or more severe than what is contemplated by these criteria such as to render their application impractical.

To the extent the Veteran's hearing loss (to include difficulty with certain sounds and pitches) impacts his ability to work, the Board notes that such impairment is accounted for in the rating criteria. The evidence does not suggest that the functional impairment described by the Veteran is inconsistent with the audiological examination results which form the basis of the schedular evaluation for his service-connected bilateral hearing loss. Even assuming for the sake of argument only that the Veteran was in an occupational setting where hearing acuity is more critical, this circumstance alone cannot satisfy the exceptional or unusual disability picture requirement for referral for extraschedular consideration. See VAOPGCPREC 6-96 (August 16, 1996) (circumstances specific to a claimant that may cause the effects of a service-connected disability to be more profound in that claimant's case does in itself provide a basis for awarding a schedular rating). 

With regard to specific examples of hearing impairment given by the Veteran (dizziness, itchiness, swelling, and draining of the ears), these are situational difficulties occasioned by his service-connected bilateral hearing loss. These examples are not manifestations of the service-connected bilateral hearing loss itself and do not establish an exceptional or unusual disability picture absent evidence that the hearing disability itself is more impairing than contemplated by the schedular criteria such as to render their application impractical. As already noted, the evidence does not show that the Veteran's hearing difficulties are inconsistent with test results which form the basis of the schedular evaluation such as to indicate that applying the rating criteria is impractical. 

As discussed above, the schedular criteria for hearing loss account for a pattern of hearing impairment that is an extreme handicap in the presence of any environmental noise. See 38 C.F.R. §§ 4.86(a) and (b); see also 64 Fed. Reg. 25209, and 59 Fed. Reg. 17295, 17296. The Veteran does not experience this pattern of hearing loss as a result of his service-connected bilateral hearing loss. The fact that he has difficulty hearing certain sounds and pitches is not enough to suggest that his service-connected bilateral hearing loss is exceptional or unusual vis-à-vis the rating criteria since it does not fit this pattern. The published commentary to the rating criteria for hearing loss found in the Federal Register make clear that these criteria are meant only to compensate a pattern of hearing loss that is an "extreme" handicap in the presence of "any" environmental noise. It can be inferred reasonably from a review of the rating criteria under 38 C.F.R. § 4.85 that they consider difficulty hearing with background noise, as they contemplate a wide range of situational factors. See Bastien, 599 F.3d at 1306. And an additional provision has been promulgated to account for "exceptional" patterns when "any" environmental noise creates an "extreme" handicap, which is not shown here either in terms of the pattern of the Veteran's hearing loss or the effect being compensated.

With regard to the Veteran's difficulty hearing family members or in situations where communication is from a distance, the Board finds the proposed rule for current § 4.86(a) accounts for a pattern of hearing loss in which a speech discrimination test in a controlled setting might be normal but would not reflect the true extent of difficulty understanding speech in the everyday work environment (as shown in the published commentary to the proposed rule). See 59 Fed. Reg. at 17296. Thus, difficulty understanding speech in the everyday work environment is contemplated already by the rating criteria for evaluating hearing loss. Again, the mere fact that the Veteran experiences difficulty hearing family members and does not have the same pattern of hearing loss does not show an exceptional or unusual disability picture. Such difficulty hearing is accounted for by 38 C.F.R. § 4.85 (which considers the results of speech recognition testing), although the degree and the pattern of hearing loss described in 38 C.F.R. § 4.86(a) might not produce accurate test results in a controlled setting with respect to speech discrimination. See 38 C.F.R. §§ 4.85, 4.86(a). If the rating criteria did not account for difficulty understanding speech and associated communication problems, then any difficulty communicating would result automatically in a finding of an exceptional and unusual disability picture. It cannot reasonably be inferred from a review of the relevant rating criteria that they do not contemplate difficulty communicating merely because there is no mention of such when they also do not mention any impairment associated with hearing loss. See Bastien, 599 F.3d at 1306. 

Alternatively, difficulty communicating with family or in situations that require communication from a distance essentially are situational circumstances and not manifestations of the hearing impairment itself. As such, it does not show an exceptional or unusual disability picture by itself any more than difficulty moving in the context of a back or knee disability. The fact that the Veteran would need to be closer in order to understand someone is an accommodating adjustment that he must make due to his service-connected bilateral hearing loss. It is not a manifestation of this disability. In sum, the evidence does not show that the Veteran's communication difficulties establish hearing loss impairment different from, or more severe than, what is accounted for in the schedular criteria such as to render their application impractical. 

With regard to the Veteran's report of dizziness, itching, swelling, or discharge of the ears, the record evidence shows that these reported symptoms have not interfered with occupational functioning. Rather, it is the Veteran's service-connected bilateral hearing loss and difficulty communicating that interfered with employment as related by him and VA examiners. The cumulative impact of the Veteran's hearing loss and associated difficulty communicating in conjunction with the reported dizziness, itching, swelling, and discharge of the ears does not otherwise amount to marked interference with employment with respect to these other symptoms (i.e., dizziness, itching, swelling, and discharge of the ears), when only his hearing loss and resultant communication difficulties affected his occupational functioning. Thus, even assuming for the sake of argument only that these symptoms satisfy the first step of the Thun inquiry, they do not satisfy the second step of Thun, namely related factors such as marked interference with employment or frequent periods of hospitalization, either alone or in conjunction with the Veteran's hearing impairment and associated communication difficulties. See Thun, 22 Vet. App. at 114. 

Moreover, service connection has been established only for bilateral hearing loss. Service connection is not in effect for the Veteran's reported dizziness, itching, swelling, and discharge of the ears. These reported symptoms cannot be taken into account in determining whether the Veteran's service-connected bilateral hearing loss is exceptional or unusual and warrants referral for extraschedular consideration. The Board notes that a November 2009 private Ear, Nose and Throat consultation report shows that the Veteran was being treated for bilateral fungal otitis externa as well as Temporomandibular Joint (TMJ) dysfunction. The November 2009 examiner's assessment was TMJ pain and resolved chronic otitis externa. The fact remains that service connection is in effect only for bilateral hearing loss and not for the other reported symptoms which the Veteran associates with this service-connected disability.
 
Even assuming for the sake of argument only that the Veteran's reported dizziness, itching, swelling, and discharge of the ears were part and parcel of his service-connected bilateral hearing loss, they have not been shown to result in marked interference with employment or frequent periods of hospitalization. Accordingly, referral for extraschedular consideration is not warranted based on the symptoms which the Veteran associates with his service-connected bilateral hearing loss. 

The Board also has considered the totality of the disability picture presented by the Veteran's service-connected bilateral hearing loss in determining his entitlement to referral for extraschedular consideration. Each of the individual difficulties that the Veteran associates with his service-connected bilateral hearing loss are not within the purview of VA compensation on any basis except insofar as the rating criteria already have built into their design a wide range of functional impairment and concomitant challenges. In other words, these reported difficulties do not present an exceptional or unusual disability picture when none may be considered as manifestations of his service-connected bilateral hearing loss for purposes of this request for referral for extraschedular consideration. The Veteran's overall disability picture is one of bilateral hearing loss and associated challenges such as the need to be in close proximity in order to understand what people are saying. This does not amount to an exceptional or unusual disability picture in terms of the rating criteria for evaluating hearing loss. 

The Board notes that, in Johnson v. McDonald, 762 F.3d 1362, 1365 (Fed. Cir. 2014), the United States Court of Appeals for the Federal Circuit (Federal Circuit) held that the combined effects of a Veteran's service-connected disabilities must also be considered in determining whether the case should be referred for extraschedular consideration. As only the evaluation of the Veteran's hearing loss is on appeal before the Board, and as all symptoms and functional impairment associated with it have been considered, referral for extraschedular consideration based on the combined effects of other service-connected disabilities is not warranted. 

As the preponderance of the evidence is against the Veteran's claim, the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107(b) (West 2014); Ortiz v. Principi, 274 F.3d 1361, 1364, 1365 (Fed. Cir. 2001) (holding that "the benefit of the doubt rule is inapplicable when the preponderance of the evidence is found to be against the claimant"); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER


Entitlement to a compensable disability rating for bilateral hearing loss on an extraschedular basis is denied. 


REMAND

As noted in the Introduction, in addition to the paper file, there are also Virtual VA and VBMS electronic files. Subsequent to the April 2015 Board decision, several documents were uploaded to the electronic files. Upon review of these files, the Board observes that further AOJ action is needed.

Relevant to the Veteran's 38 U.S.C.A. § 1151 claim for drug-induced discoid lupus, the Board notes that an April 2012 rating decision denied this claim. In May 2012, the Veteran filed a notice of disagreement (NOD). In May 2014, the AOJ issued a statement of the case (SOC), and the Veteran subsequently filed a substantive appeal in May 2014. This issue was certified to the Board in September 2015. On his May 2014 substantive appeal, the Veteran requested a Board hearing. The Board notes that the AOJ has sent several letters (located in Virtual VA) to the Veteran between February 2015 and November 2015 with regards to a Board hearing; however, it does not appear that the requested hearing has been scheduled. And there is no indication that the Veteran has withdrawn his hearing request. Accordingly, a remand is necessary in order to afford the Veteran his requested hearing. See 38 C.F.R. §§ 20.703, 20.704 (2015).

Relevant to the service connection claim for a right foot/toe disability, the Board observes that a February 2015 rating decision denied this claim. The Veteran filed a NOD in September 2015; however, the RO has not issued an SOC with respect to this claim. Where a claimant files a notice of disagreement and the RO has not issued an SOC, the issue must be remanded to the RO for an SOC. See Manlincon v. West, 12 Vet. App. 238, 240-241 (1999).

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a hearing before a Veterans Law Judge (either in-person or via videoconference) on his 38 U.S.C.A. § 1151 claim for drug-induced discoid lupus. Notify the Veteran and his service representative of this hearing in accordance with 38 C.F.R. § 20.704(a). A copy of any hearing notice letter, and any response, should be associated with the Veteran's claims file.

2. Issue a Statement of the Case (SOC) to the Veteran and his service representative on the claim of service connection for a right foot/toe disability. A copy of any SOC should be associated with the Veteran's claims file. This claim should be returned to the Board for further appellate consideration only if the Veteran perfects a timely appeal.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
MICHAEL T. OSBORNE
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs