O’MALLEY, Circuit Judge.
Appellant Freddie H. Mathis (“Mathis”) appeals from a decision of the United States Court of Appeals for Veterans Claims (“Veterans Court”) affirming a Board of Veterans’ Appeals (“Board”) decision denying service connection for sarcoidosis, a pulmonary condition. Mathis v. McDonald, No. 13-3410, 2015 WL 2415067, 2015 U.SApp. Vet. Claims LEXIS 654 (Vet.App. May 21, 2015). Because we are bound by this court’s controlling precedent establishing a presumption of competency for VA medical examiners, we affirm.
Background
Mathis served on active duty in the U.S. Air Force from August 1980 to August 2002. According to private treatment records, Mathis was diagnosed with sarcoido-sis in September 2009.[1] He filed a claim for service connection the following month. After a VA regional office (“RO”) denied his claim in March 2010, Mathis appealed his case to the Board.
The RO had determined that certain of Mathis’s service treatment records' (“STRs”) had become unavailable. In March 2011, in order to compensate for his missing STRs, Mathis and his ex-wife testified at a Decision Review Officer (DRO) hearing. During the hearing, Mathis testified that his sarcoidosis began during the late 1990s (i.e., the last few years of his active duty) and that, during his active military service, he experienced weakness, fatigue, and shortness of breath. He stated that he was treated for these symptoms while in active service. He also testified that his sarcoidosis may be the result of environmental exposures while he was stationed in.Italy. Mathis’s ex-wife testified that his health declined during their marriage while he was on active duty. Finally, Mathis submitted two statements from veterans who were in the Air Force with him and described his shortness of breath during his active service and since that time.
Based on these lay assertions, the VA obtained the medical opinion of VA medical examiner John K. Dudek in February 2012. Dr. Dudek reviewed Mathis’s claims file, including the hearing transcript and lay statements, but did not examine Mathis or perform any tests. Dr. Dudek concluded that Mathis’s sarcoidosis was less likely than not incurred in or caused by Mathis’s service. The examiner found that there was no evidence to support the conclusion that Mathis’s pulmonary symptoms while in service were related to sarcoido-sis. The examiner stated that while he *970 was “not doubting the validity” of the lay statements, the sarcoidosis was diagnosed seven years after service and nothing indicated the sarcoidosis existed within one year of service. Joint Appendix (“J.A.”) 47. Moreover, he suggested that, if Mathis had significant breathing issues post service, “one can assume he would have sought medical care.” Id.
In June 2013, the Board issued a decision on Mathis’s claim. The Board made factual findings that Mathis’s sarcoidosis “was not manifested during his military service, is not shown to be causally or etiologically related to his active military service, and is not shown to have manifested to a degree of 10 percent or more within one year from the date of separation from the military.” J.A. 51. The Board recognized that the VA has a duty to assist, which includes providing a medical examination or obtaining a medical opinion when necessary to make a decision on a claim. Here, the Board noted that only a VA medical opinion, rather than a medical examination, had been afforded to Mathis, but, nevertheless, found that the VA had met its duty by making all reasonable efforts to obtain evidence necessary to substantiate Mathis’s claim.
The Board then stated that entitlement to service connection for a particular disorder requires (1) evidence of the existence of a current disorder, and (2) evidence that the disorder resulted from a disease or injury incurred in or aggravated during service. 38 U.S.C. §§ 1110, 1131. The Board found that, although Mathis satisfied the first element, he failed to establish that the second was met. Although the Board acknowledged that Mathis and his friends and family were competent and credible to report that he experienced fatigue and shortness of breath during and since his military service, it held that these laypersons were not competent to assert a causal link between these symptoms and the sarcoidosis. The Board then found that all of the other evidence in the claims file supported the VA’s denial of service connection. The only medical opinion contained in the claims file, that of VA examiner Dr. Dudek, found no nexus between Mathis’s service and sarcoidosis. And Mathis testified at the DRO hearing that he did not seek treatment and did not receive a diagnosis of sarcoidosis until 2009, seven years after his active service ended. The Board, therefore, denied Mathis’s claim for service connection.
Mathis then appealed to the Veterans Court. Mathis argued to the court that: (1) the Board erred in relying on an inadequate VA examiner opinion; and (2) the VA failed to establish that the' examiner was competent to provide an opinion in this case. The Veterans Court dispensed with Mathis’s first argument, holding that the Board’s finding that the VA examiner’s opinion was adequate was not clearly erroneous. It further agreed with the Board that Mathis and his fellow service members were not competent to draw a conclusion as to the cause of his sarcoidosis.
As for Mathis’s second- argument, the Veterans Court noted that Mathis recognized legal authority that placed the burden on the claimant to challenge the competency of VA medical examiners. Nevertheless, Mathis argued that the VA failed to establish that Dr. Dudek, who specialized in family practice, was qualified to offer an expert opinion in the field of pulmonology. The court held that though the presumption of competency is rebuttable, objecting to the examiner’s Competence was the first step to overcoming the presumption. Mathis conceded he had not objected before the Board, but stated that he “wishes to preserve for Federal Circuit appeal a challenge to the correctness of’ the case law *971 on this issue. Mathis, 2015 WL 2415067, at *3-4, 2015 U.S.App. Vet. Claims LEXIS 654, at *9. The Veterans Court held that the mere fact that the VA examiner was not a pulmonologist did not, by itself, render the opinion inadequate. Therefore, it affirmed.
Mathis timely appealed. This court has jurisdiction under 38 U.S.C. § 7292.
DISCUSSION
In an appeal from the Veterans Court, we review all questions of law de novo. 38 U.S.C. § 7292(d)(1); see Beraud v. McDonald, 766 F.3d 1402, 1405 (Fed.Cir.2014) (citing Rodriguez v. Peake, 511 F.3d 1147, 1152 (Fed.Cir.2008)). Absent a constitutional issue, however, we lack jurisdiction to review factual determinations or the application of law to the particular facts of an appeal from the Veterans Court. 38 U.S.C. § 7292(d)(2); see Guillory v. Shinseki, 603 F.3d 981, 986 (Fed.Cir.2010); Moody v. Principi, 360 F.3d 1306, 1310 (Fed.Cir.2004).
The only issue on appeal is a legal one: whether this court should disavow, the presumption of competency as it applies to VA medical examiners. Recently, and over only a short span of time, this court has developed a line of authority applying the presumption of competency to VA medical examiners and their medical opinions in veteran’s benefits cases.
Rizzo was the first case. There, a veteran appealed a denial of service-connection for an eye disability-that he alleged resulted from his exposure to ionizing radiation during his service in the Air Force. The testimony of a Ph.D. in . radiation physics offered by the veteran and that of a VA department expert were in conflict. Rizzo v. Shinseki, 580 F.3d 1288, 1290 (Fed.Cir.2009). The veteran argued that the Veterans Court incorrectly held that the Board could assume the qualifications of the VA expert. We adopted the reasoning of the Veterans Court in Cox v. Nicholson, 20 Vet.App. 563, 568 (2007), which held that “the Board is entitled to assume the competence of a VA examiner” based on the presumption of regularity. Rizzo, 580 F.3d at 1290. Thus, we held that, “where as here, the veteran does not challenge a VA medical expert’s competence or qualifications before the Board, this court holds that VA need not affirmatively establish that expert’s competency.” Id.
A year later, we expanded on Rizzo in Bastien v. Shinseki, 599 F.3d 1301, 1306 (Fed.Cir.2010), finding that case “controlling” on the issue of whether the Board improperly relied on the department’s medical witness without establishing his qualifications. We further clarified that, in order to 'challenge a VA medical examiner’s qualifications, a veteran must do more than merely request them. This is because “[a] request for information about an expert’s qualifications ... is not the same as a challenge to those qualifications. Indeed, one may assume that litigants who are told an expert witness’ qualifications frequently may conclude that theré is no reasonable basis for challenging those qualifications.” Id. at 1306. We stated, moreover, that, in order to give the trier of fact the ability to determine the validity of a challenge to the expertise of a VA expert, a challenge “must set forth the specific reasons why the litigant concludes that the expert is not qualified to give an opinion.” Id. at 1307.
. These variations on a theme continued the following year when we issued Sickels v. Shinseki, 643 F.3d 1362 (Fed.Cir.2011). 38 U.S.C. § 7104(d)(1) requires the Board’s decisions to include: a written statement of the reasons or bases for its findings and conclusions; In Sickels, the veteran argued that the Board violated § 7104(d)(1) by not providing a written *972 explanation for its implicit conclusion that a VA medical opinion was sufficiently informed. We held that, “[w]hile we did not explicitly state so in Rizzo, it should be clear from our logic that the Board is similarly not mandated by section 7104(d) to give reasons and bases for concluding that a medical examiner is competent unless the issue is raised by the veteran. To hold otherwise would fault the Board for failing to explain its reasoning on unraised issues.” Sickels, 643 F.3d at 1366.
Finally, and most recently, we applied the presumption of competency in Parks v. Shinseki, 716 F.3d 581, 584 (Fed.Cir.2013). There, the VA selected an advanced registered nurse practitioner (ARNP) to determine whether there was a relationship between a veteran’s service and several health conditions, including diabetes. We found that the VA was required to rely only on “competent medical evidence,” which is defined by VA regulations as “evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions.” 38 C.F.R. § 3.159(a)(1). We then stated, however, that, “[i]n the case of competent medical evidence, the VA benefits from a presumption that it has properly chosen a person who is qualified to provide a medical opinion in a particular case.” Parks, 716 F.3d at 585 (citing Sickels, 643 F.3d at 1366). We explained that the presumption furthered the policy of preventing “[r]epeated unnecessary remands for additional evidence [that may] complicate many cases and lead to system-wide backlogs and delays.” Id. We addressed, moreover, the veteran’s argument that under Comer v. Peake, 552 F.3d 1362, 1363, 1369 (Fed.Cir.2009), the record must be construed sympathetically in- favor of pro se veterans. We held that, because the veteran failed to raise an objection before the Board that anything was improper with the VA’s selection of an ARNP or the particular ARNP on his case, Comer did not apply. Thus, we held that the Board was not required to read into the record an argument that was never made.
Turning to the ease at bar, Mathis recognizes that we have endorsed the presumption of competency, but, nevertheless, “asks th[is court] to disapprove Rizzo v. Shinseki, 580 F.3d 1288 (Fed.Cir.2009) and its progeny.” Appellant Br. 6 (citing Fed. Cir. R. 35(a)(1)). He says that Rizzo came as a blow to pro se claimants and that applying the presumption “shift[s] the VA disability benefits program towards an adversarial adjudicatory model and ... degrade[s] the disability evaluation process [by] havfing] unqualified medical personnel provide expert medical opinions.” Appellant Br. 3.
Mathis raises several arguments against the application of the presumption of competency. He argues that the presumption of regularity, which underlies the presumption of competency, should only apply to routine, non-discretionary, and ministerial procedures. As such, he maintains, it is improper to apply the presumption to VA medical examiners where the procedures for their selection and assignment are discretionary and have not been shown to bear 'indicia of reliability. He contends that the presumption of competency-lies in contradiction to Congress’s articulated desire to create a nonadversarial adjudicatory system for veterans. See Vanerson v. West, 12 Vet.App. 254, 260 (1999) (“[T]he legislative history of the Veterans’ Judicial Review Act, Pub.L. No. 100-687, 102 Stat. 4105 (1988), indicates that adversarial concepts of adjudication were not to be adopted into the VA adjudication ' system.”). According to Mathis, the presumption of competency also unfairly puts the burden on the veteran — an unsophisticated party who cannot readily access the *973 relevant information — to raise a specific objection to an expert’s testimony. Finally, he argues that it would not be unduly burdensome for the government to establish the qualifications of its examiners affirmatively.
Mathis’s presumption of regularity argument in particular presents some legitimate concerns. Rizzo invoked three cases in support of its holding: Cox, 20 Vet.App. at 568, Miley v. Principi, 366 F.3d 1343, 1347 (Fed.Cir.2004), and Butler v. Principi, 244 F.3d 1337, 1338 (Fed.Cir.2001). None of these cases, however, provides a solid foundation for the broad application of the presumption of regularity to medical examiners. Cox relied on Hilkert v. West, 12 Vet.App. 145, 151 (1999), a Veterans Court case that merely briefly noted that the Board in that case implicitly accepted the VA physician’s competency and the claimant had failed to show that such reliance was in error.
Miley was concerned with whether the VA RO timely mailed the veteran a notice of its decision, thus triggering the veteran’s time to file an appeal. We stated that the presumption of regularity could be employed, “in the absence of evidence to the contrary, [to establish] that certain ministerial steps were taken in accordance with the requirements of law.” Miley, 366 F.3d at 1347 (emphasis added). We held that the presumption of regularity applies where “the Board finds that [a] decision notice was designated to be mailed along with other documents that were in fact [timely] mailed.... In that setting, the presumption of regularity may properly be invoked — ” Id. at 1347 (emphasis added). Thus, the holding of that case was limited to certain ministerial steps, and there was no discussion of whether it would be appropriate to apply the presumption to VA medical examiners.
Finally, Butler stated that, the “‘presumption of regularity’ supports official acts of public officers” and holds that, “[i]n the absence of clear evidence to the contrary, the doctrine presumes that public officers have properly discharged their official duties.” 244 F.3d at 1340. It, too, however, pertained only to the presumption of regularity as it applied to the VA’s mailing of notices to veterans under 38 U.S.C. § 5104.
The presumption of regularity, like the hearsay exception for business records in the Federal Rules of Evidence, has “at [its] root a showing that the [result] was the product of a consistent, reliable procedure.” Posey v. Shinseki, 23 Vet.App. 406, 410 (2010). Thus, the presumption should be predicated on evidence that gives us confidence that a particular procedure is carried out properly and yields reliable results in the ordinary course. As the Third Circuit has recognized, “[m]ost presumptions have come into existence primarily because judges have believed that proof of fact B renders the inference of the existence of fact A so probable that it is sensible and timesaving to assume the truth of fact A until the adversary disproves it.” Malack v. BDO Seidman, LLP, 617 F.3d 743, 749 (3d Cir.2010) (quoting McCormick on Evidence § 343 (John W. Strong ed. 5th ed.1999)).
It is no wonder, therefore, that the presumption of regularity has been applied repeatedly to the government’s mailing of certain types of notices. See e.g., Crain v. Principi, 17 Vet.App. 182, 186 (2003) (“the law presumes the regularity of the administrative process”);. Davis v. Principi, 17 Vet.App. 29, 37 (2003) (applying a “presumption of regularity of mailing”); Schoolman v. West, 12 Vet.App. 307, 310 (1999) (“ ‘clear evidence to the contrary’ is required to rebut the presumption of regularity, i.e., the presumption that notice was *974 sent in the regular course of government action”). In such cases, the acts at issue are typically ministerial, routine, and non-discretionary.[2]
The Veterans Court has displayed caution and hesitance towards expanding the presumption of regularity to new contexts. In Kyhn v. Shinseki, 26 Vet.App. 371, 374 (2013), for example, the Veterans Court remanded a case to the Board for it to assess, in the first instance, whether (1) the VA’s duty to notify a veteran of his upcoming medical examination was actually fulfilled, or (2) the VA is entitled to a presumption of regularity in its mailing of notices of scheduled VA examinations. Id. Thus, though Rizzo already had established the presumption of competency and the presumption of regularity had long been applied to certain VA mailing procedures, the court still saw a need for a separate evaluation of whether the presumption was proper with respect to the mailing of notices to veterans regarding their VA examinations. Nowhere in the Rizzo line of cases, however, did either the Veterans Court or this court perform an analysis to verify that the procedures attending the selection and assignment of VA examiners are, in fact, regular, reliable, and consistent.
In fact, Mathis argues that the VA’s procedure for selecting qualified examiners is inherently unreliable because the VA broadly recommends assigning generalists except in unusual, ill-defined cases. The VA Adjudication Procedures (M21-Manual) states that examinations routinely performed by specialists include hearing, vision, dental, and psychiatric examinations, but otherwise instructs its staff to “[r]e-quest a specialist examination only if it is considered essential for rating purposes,” for example “if an issue is unusually complex[, ] if there are conflicting opinions or diagnoses that must be reconciled, or [] based on a BVA remand.” VA Adjudication Procedures Manual, M21-1MR, Part III, Subpart iv, ch. 3, § A(6) (change date July 30, 2015). Furthermore, a VA fast letter directed to “All VA Regional Offices and Centers,” states: “[pjlease note that a specialist is only required in limited situations .... For all other types of examinations, a generalist clinician may perform the examination. For example, an office may order a cardiac examination, but it should not generally request that a cardiologist (a specialist) conduct it.” Veterans Benefits Administration Fast Letter 10-32 (September 1, 2010). Mathis argues that this guidance fails to ensure to a high degree of certainty that the VA examiner assigned to a given ease is able to provide a “competent medical opinion” in accordance with 38 C.F.R. § 3.159(a)(1). In his view, a generalist is not competent to provide an expert opinion on a condition like sarcoidosis absent a showing of education, training, or experience relevant to such a condition.
The government attempts to reassure us that the veteran may obtain a specialist’s opinion where the government determines that such an opinion is “necessary to make a decision on the claim,” 38 U.S.C. § 5103A(d). But the process by which the VA appoints examiners for a particular case remains unclear. Without this information, we cannot tell whether the procedures in question are, in fact, regular, reliable, and consistent.
*975 We need not — and cannot — resolve this debate. We lack jurisdiction to make factual findings on appeal regarding the competency of the particular examiner employed by the VA in this case and are bound by clear precedent to presume that Dr. Dudek was competent to render the opinion he did. We note, however, that, though there may be a fair basis to criticize the Rizzo line of cases, there exists a practical need for an administrable rule, given the volume of claims the VA is charged with processing. Replacing the presumption established by Rizzo would require a concrete, clear standard for determining the sufficiency of an examiner’s qualifications to conduct an examination or provide a medical opinion.
Conclusion
The Veterans Court did not err in its interpretation of our precedent. We, therefore, affirm.
AFFIRMED.

. Sarcoidosis is “a chronic, progressive, systemic granulomatous reticulosis of unknown etiology, characterized by hard tubercles.” Dorland’s Illustrated Medical Dictionary 1668 (32d ed.2012).

. See Latif v. Obama, 677 F.3d 1175, 1207 (D.C.Cir.2012) (Tatel, J., dissenting) (finding that "every case applying the presumption of regularity” has "in common: actions taken or documents produced within a process that is generally reliable because it is, for example, transparent, accessible, and often familiar. As a result, courts have no reason to question the output of such processes in any given case absent specific evidence of error,”).