Citation Nr: 1736697 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 09-44 974 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to a disability rating in excess of 10 percent for status post anterior cruciate ligament reconstruction of the right knee with degenerative joint disease prior to February 15, 2012 and in excess of 20 percent thereafter.

2. Entitlement to a disability rating in excess of 10 percent for degenerative arthritis of the left knee. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

S. Owen, Associate Counsel


INTRODUCTION

The Veteran served on active duty from August 1986 to January 2000. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida, which, in part, denied increased ratings for service-connected right and left knee disabilities, which were each rated at 10 percent.

In May 2011, the Veteran testified at a Travel Board hearing at the RO in St. Petersburg, Florida before the undersigned Veteran's Law Judge. A transcript of the hearing is associated with the claims file. 

In December 2011, the Board remanded the case for further development of the record, including obtaining a VA examination and medical opinion. 

In a September 2012 rating decision, the RO granted a higher 20 percent rating for the right knee disability, effective February 15, 2012.

In March 2013, the Board again remanded the claims, in order to obtain the Veteran's vocational rehabilitation records and relevant ongoing VA medical records. 

In a November 2013 decision, the Board denied increased ratings for the service-connected bilateral knee disabilities. The Veteran then appealed to the United States Court of Appeals for Veterans Claims (Court). In a July 2014 order, the Court granted the parties' joint motion for partial remand, vacating the Board's November 2013 decision pertaining to the bilateral knee disabilities, and remanded the claims to the Board. 

In October 2014 and February 2017, the Board remanded the case for further development of the record, including obtaining VA examinations and medical opinions. There has been substantial compliance with the requested development. Stegall v. West, 11 Vet. App. 268 (1998); see Dyment v. West, 13 Vet. App. 141 (1999).

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this case should take into consideration the existence of this electronic record.


FINDINGS OF FACT

1. The Veteran's right knee disability did not result in extension limited to at least 10 degrees, flexion limited to at least 15 degrees, ankylosis, severe recurrent subluxation or lateral instability, dislocation of the semi-lunar cartilage, impairment of the tibia and fibula, or genu recurvatum for any period on appeal. Prior to February 15, 2012, the Veteran's right knee disability did not result in flexion limited to at least 30 degrees.

2. The Veteran's left knee disability did not result in extension limited to at least 10 degrees, flexion limited to at least 30 degrees, ankylosis, severe recurrent subluxation or lateral instability, dislocation of the semi-lunar cartilage, impairment of the tibia and fibula, or genu recurvatum for any period on appeal. 



CONCLUSIONS OF LAW

1. The criteria for entitlement to a disability evaluation in excess of 10 percent for status post anterior cruciate ligament reconstruction of the right knee with degenerative joint disease prior to February 15, 2012 and in excess of 20 percent thereafter, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3 159, 3.321, 4.1-4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010, 5055, 5256-5263 (2016).

2. The criteria for entitlement to a disability evaluation in excess of 10 percent for degenerative arthritis of the left knee have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2104); 38 C.F.R. §§ 3.159, 3.321, 4 1-4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010, 5055, 5256-5263 ( 2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5103, 5013A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative of any information, and any medical or lay evidence, not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). VCAA notice should be provided to a claimant before the initial unfavorable agency of original jurisdiction decision on a claim. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

The Veteran was advised of VA's duties to notify and assist in the development of the claims at issue by notice letter dated in July 2007. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

The VCAA also provides that VA has a duty to assist claimants in obtaining evidence needed to substantiate a claim. 38 U.S.C.A. § 5103A; 38 C.F.R § 3.159(c). Here, the Veteran's service records and VA treatment records have been obtained and associated with the claims file. The Veteran was afforded VA examinations in December 2007, March 2010, February 2012, August 2015, November 2015, and March 2017. The examinations are of record. To that end, when VA undertakes to either provide an examination or to obtain an opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The VA examination reports reflect that relevant records were reviewed and the examiner personally interviewed and examined the Veteran, including eliciting a history from him, and offered opinions. 

The Veteran has been afforded a meaningful opportunity to participate effectively in the processing of the claim, including by submission of statements and arguments. Based upon the foregoing, the duties to notify and assist the Veteran have been met, and no further action is necessary to assist the Veteran in substantiating this claim.

Increased Ratings

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities. The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2016). Any reasonable doubt regarding a degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3 (2016).

Where entitlement to compensation has already been established and an increase in disability rating is at issue, the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Within that context, VA must assess the level of disability from the date of initial application for service connection and determine whether the level of disability warrants the assignment of different disability ratings at different times over the life of the claim, a practice known as a "staged rating." See Fenderson v. West, 12 Vet. App 119 (1999).

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficiently characteristic to identify the disease and the resulting disability and above all, coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21. Generally, the Board has been directed to consider only those factors contained wholly in the rating criteria. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); but see Mauerhan v. Principi, 16 Vet. App. 436 (2002) (finding it appropriate to consider factors outside the specific rating criteria in determining level of occupational and social impairment).

The standard of proof to be applied in decisions on claims for veteran's benefits is set forth in 38 U.S.C.A. § 5107 (West 2014). A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence. See 38 C.F.R. § 3.102 (2016). When a claimant seeks benefits and the evidence is in relative equipoise, the claimant prevails. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. See Alemany v. Brown, 9 Vet. App. 518 (1996). 

When evaluating musculoskeletal disabilities, VA may, in addition to applying the schedular criteria, assign a higher disability rating when the evidence demonstrates functional loss due to limited or excessive movement, pain, weakness, excessive fatigability, or incoordination, to include during flare-ups and with repeated use, if those factors are not considered in the rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59; Burton v. Shinseki, 25 Vet. App. 1, 5 (2011); Mitchell v. Shinseki, 25 Vet. App. 32, 42-43 (2011) (holding that pain "must actually affect some aspect of 'the normal working movements of the body' such as 'excursion, strength, speed, coordination, and endurance' [under] 38 C.F.R. § 4.40 in order to constitute functional loss" and therefore warrant a higher rating); see also DeLuca v. Brown, 8 Vet. App. 202 (1995). Further, the United States Court of Appeals for Veterans Claims (Court) recently held that the plain language of 38 C.F.R. § 4.59 indicates that the regulation is not limited to the evaluation of musculoskeletal disabilities under diagnostic codes predicated on range of motion measurements. Southall-Norman v. McDonald, 28 Vet. App. 346 (2016). With or without degenerative arthritis, it is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. Burton v. Shinseki, 25 Vet. App. 1, 5 (2011). A 10 percent rating under 38 C.F.R. § 4.59 requires that the diagnostic code under which the Veteran is rated contains a 10 percent rating. Sowers v. McDonald, 27 Vet. App. 472 (2016).

The Veteran is rated at 10 percent for his status post anterior cruciate ligament reconstruction of the right knee with degenerative joint disease prior to February 15, 2012 and at 20 percent thereafter, based on limitation of flexion. The RO has assigned a separate, non-compensable disability rating for limitation of extension of the right knee. The Veteran is rated at 10 percent for degenerative arthritis of the left knee.

The normal range of motion for the knee is from 0 degrees extension to 140 degrees flexion. See 38 C.F.R. § 4.71, Plate II (2016).

Diagnostic Code 5010 directs that traumatic arthritis substantiated by x-ray findings should be rated as degenerative arthritis under Diagnostic Code 5003. Under Diagnostic Code 5003, degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate codes for the specific joint or joints involved. If the limitation of motion is non-compensable, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added, under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion.

In the absence of limitation of motion, a 20 percent evaluation is merited for X ray evidence of involvement of two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations. A 10 percent evaluation is merited for X-ray evidence of involvement of two or more major joints or two or more minor joint groups. 38 C.F.R. § 4.71a, Diagnostic Code 5003.

Under Diagnostic Code 5257, which rates impairment based on recurrent subluxation or lateral instability of the knee, a 10 percent rating will be assigned with evidence of slight recurrent subluxation or lateral instability, a 20 percent rating will be assigned with evidence of moderate recurrent subluxation or lateral instability, and a 30 percent rating will be assigned with evidence of severe recurrent subluxation or lateral instability. 38 C.F.R. § 4.71a, Diagnostic Code 5257.

The words "slight," "moderate," and "severe" as used in the various diagnostic codes are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence for "equitable and just decisions." 38 C.F.R. § 4.6.

Under Diagnostic Code 5258, dislocated semilunar cartilage with frequent episodes of locking, pain, and effusion into the joint will be rated as 20 percent disabling. 38 C.F.R. § 4.71a, Diagnostic Code 5258.

Under Diagnostic Code 5259, removal of semilunar cartilage that is symptomatic will be assigned a 10 percent disability rating. 38 C.F.R. § 4.71a, Diagnostic Code 5259.

Under Diagnostic Code 5260, a 10 percent rating will be assigned for limitation of flexion of the knee to 45 degrees, a 20 percent rating will be assigned for limitation of flexion of the knee to 30 degrees, and a 30 percent rating will be assigned for limitation of flexion of the knee to 15 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5260.

Under Diagnostic Code 5261, a 10 percent rating is assigned for extension limited to 10 degrees, a 20 percent disability rating is assigned for extension limited to 15 degrees, a 30 percent disability rating is assigned for extension limited to 20 degrees, a 40 percent disability rating is assigned for extension limited to 30 degrees, and a 50 percent disability rating is assigned for extension limited to 45 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5261.

Under Diagnostic Code 5262, malunion of the tibia and fibula with moderate knee or ankle disability will be assigned a 20 percent disability rating, malunion of the tibia and fibula with marked knee or ankle disability will be assigned a 30 percent disability rating, and nonunion of the tibia and fibula with loose motion, requiring a brace, will be assigned a 40 percent disability rating. 38 C.F.R. § 4.71a, Diagnostic Code 5262.

At a July 2007 VA orthopedic surgery consultation, the Veteran complained of bilateral knee pain. He reported discomfort with weight-bearing of the right knee, as well as morning stiffness and a feeling of giving way. He also described increasing pain in the left knee. The Veteran denied locking or clicking. The Veteran was noted as walking with a pronounced limp, favoring the right knee. Upon examination, range of motion of the right knee was from 0 degrees extension to 50 degrees flexion. There was no objective evidence of effusion or instability observed. Although range of motion of the left knee was not noted, the Veteran was observed to have some crepitus with movement of the joint. However, he had a normal tracking patella and there was no effusion or instability. The impression was status post right ACL reconstruction with loss of full range of motion of the right knee and an old lateral hamstring tear in the right thigh, as well as an old left patellar fracture with symptoms of patellofemoral arthritis. 

A December 2007 VA examination report reflects that the Veteran complained of pain and weakness, but denied stiffness, swelling, heat, redness, instability, giving way, locking, fatigability, or lack of endurance. He also denied episodes of dislocation or recurrent subluxation. His condition was treated with physical therapy, joint injections, and oral ibuprofen as needed. He did not use any assistive devices. He reported that his disabilities did not affect his occupation as a student or his activities of daily living. He did report some limitation with prolonged walking. On objective examination, the Veteran's gait and posture were normal. There was no evidence of joint ankylosis, instability, or effusion in either knee. Range of motion of the right knee was from 0 degrees extension to 100 degrees flexion, with pain beginning at 60 degrees. There was no additional loss of motion following repetitive testing. Range of motion of the left knee was from 0 degrees extension to 95 degrees flexion with pain beginning at 60 degrees. There was no additional loss of motion following repetitive testing. The Veteran was diagnosed with moderate, progressive degenerative joint disease of the right knee with old ACL repair with hamstring transfer, traumatic arthritis of the left patella, and tendonitis of the left patella tendon. 

The Veteran's treatment records reflect that he continued to have injections to his knees. See March 2008 VA treatment records. 

A March 2010 examination report reflects that the Veteran reported increasing pain, stiffness, and instability in the right knee since his last VA examination. He denied any falls. He reported that his knees were being treated with tramadol, intra-articular injections of Hyalgan, and NSAIDs. While the Veteran complained of pain, stiffness, weakness and instability, he denied deformity, incoordination, giving way, episodes of dislocation or subluxation, episodes of locking, or effusion. He reported that he was able to stand for fifteen to thirty minutes and walk more than 1/4 mile but less than 1 mile. He also reported the intermittent, but frequent use of a brace on the right knee. He described mild to moderate effect of his disabilities on activities of daily living. On objective examination, the Veteran's gait was antalgic, but there was no evidence of abnormal weight-bearing. Range of motion of the right knee was from 0 degrees extension to 40 degree flexion. There was objective evidence of pain following repetitive motion, but no additional loss of motion. The Veteran had full range of motion of the left knee, with no objective evidence of painful motion and no additional limitation of motion following repetitive testing. 

An April 2010 VA orthopedic surgery procedure note reflects ongoing complaints of bilateral knee pain. On examination, the Veteran's right knee was noted to have a well-healed surgical scar, but no tenderness to palpation, with range of motion indicated as 70-90 degrees. The Veteran had range of motion of the left knee from 0 to 130 degrees with crepitation. There were no scars, deformity, or effusion, but there was tenderness to palpation. Valgus and varus stress tests were negative. Motor strength was 4/5 and the patella tracked midline. 

In January 2011, the Veteran's right knee was noted to have a range of motion of 0 degrees to 130 degrees, was stable, and negative for effusion. 

At his May 2011 Travel Board hearing, the Veteran reported that his right knee was "really shaky" and that sometimes locked up so he would wear a brace. He testified that he has difficulty standing for prolonged periods, walking long distances, and going up stairs. He also stated that his left knee locked when he puts all his weight on it. He complained that he is unable to play with his son because of his disabilities. 

In August 2011, the Veteran's left knee was noted to have a range of motion of 0 degrees to 120 degrees, was stable, and negative for effusion. September 2011 medical records reflect that the Veteran's right knee had a range of motion of 0 degrees to 110 and 120 degrees, and his left knee had a range of motion of 0 degrees to 120 degrees. Both knees were negative for effusion. 

A February 2012 VA examination report reflects that the Veteran continued to experience progressively worsening pain in his knees, right greater than left. He described the pain as worsening with prolonged sitting or standing. He reported getting injections in his knees every six months at VA which reduced the pain to a bearable level for three or four months. He reported taking meloxicam 15mg once daily for chronic pain and two tramadol pills in the morning. He described frequent swelling in his right knee and difficulty sleeping and dressing due to knee pain. He complained of clicking/popping in both knees and giving way of the right knee on occasion if he did not use a cane. He described flare ups as primarily triggered by cold and rain, lasting a few hours to a few days, during which he suffered from increased pain and decreased mobility. He reported regularly using a right knee brace and constant use of a cane. On objective examination, range of motion of the right knee was from 5 degrees extension to 20 degrees flexion with pain throughout the range of motion. Range of motion of the left knee was from 0 degrees extension to 100 degrees flexion, with pain at the endpoint. The Veteran was unable to perform repetitive testing of the right knee due to pain. Repetitive testing of the left knee did not result in additional loss of motion. Muscle strength was decreased to 4/5 in the right knee. There was no anterior or posterior instability of either knee joint. There was no medial lateral instability of the left joint, but the examiner was unable to test the right knee joint. There was no evidence or history of patellar subluxation or dislocation bilaterally or any meniscal condition. There was tenderness to palpation, primarily along the lateral collateral ligament of the right knee. The examiner observed that the Veteran had great difficulty putting on his right shoe and constantly held his right leg in approximately 30 degrees flexion even at rest. The examiner noted that a January 2008 MRI of the left knee showed effusion and probable healed fracture of the patella. A July 2007 MRI of the right knee showed status post anterior cruciate repair and degenerative changes. The examiner noted that the Veteran's bilateral knee condition did not significantly interfere with the Veteran's school attendance, but that in terms of full time employment, his condition would have a mild to moderate effect. The Veteran was noted to have to change positions frequently; was unable to stand for more than ten minutes at a time; and could not squat, climb, or lift more than 10 pounds for a short distance. 

March and April 2012 medical records reflect range of motion in the right knee from 0 degrees to 100 and 120 degrees, and in the left knee of 0 to 120 degrees. In December 2012 and January 2013, it was noted that the Veteran had a good gait with use of a cane, and that bilaterally, his knees had a range of motion of 0 to 120 degrees, and were stable. 

May and July 2012 and May and July 2013 orthopedic follow up notes reflect that the Veteran's right knee had a range of motion of 0 to 60 and 70 degrees, and his left knee had a range of motion of 0 to 130 degrees. 

In November 2013, the Veteran was evaluated for and fitted with hinged knee braces. The Veteran's right knee range of motion was 0 to 50 degrees, and his left knee was 0 to 120 degrees.

In August 2014, the Veteran was fitted with pull-up knee sleeves with nylon side stays. In August and November 2014, bilateral range of motion was from 0 to 120 and 130 degrees and the knees were negative for effusion.

An August 2015 examination report only considered the Veteran's right knee. The Veteran described that he had popping, stiffness, and chronic pain of the knee and was prescribed a cane and a brace due to instability. He continued to receive hyalgan injections every six months and daily meloxicam. The Veteran reported that he did not have flare-ups, but did report functional loss, in that he was unable to play sports or work as an electrician, he had to pay someone to mow the lawn, and any type of squatting caused pain. On objective examination, range of motion of the right knee was from 0 degrees to 60 degrees of flexion, and from 60 degrees to 0 degrees on extension, with pain on flexion and in weight-bearing. There was evidence of tenderness on palpation, with edema and tenderness around the entire knee and evidence of crepitus. The Veteran was not able to perform repetitive use testing. The examiner noted that swelling, disturbance of locomotion, and interference with standing all contributed to the Veteran's disability, but there was no history of ankylosis, recurrent subluxation, lateral instability, or recurrent effusion. Joint stability was found to be normal. The Veteran was noted to use a brace and cane regularly. Functional impairment was found to be moderate to severe, as the Veteran was unable to climb stairs, squat, do normal daily activities at home, or work as an electrician. 

A November 2015 examination considered both the right and left knee disabilities. The Veteran described that his knees were painful and aggravated by prolonged standing, sitting, and walking, and that it was difficult to use the stairs or to squat. The Veteran reported experiencing flare-ups of his knees, with severe sharp and achy pains in both knees. The Veteran reported that he could not stand or walk after repeatedly using his knees over time. On objective examination, range of motion of the right knee was from 10 degrees to 50 degrees of flexion, and from 50 degrees to 10 degrees of extension, with pain noted on flexion and extension. There was evidence of pain on weight bearing, crepitus, and swelling and tenderness to palpation of the anterior knee joint related to inflammation. The Veteran had range of motion of the left knee from 0 degrees to 90 degrees of flexion, and from 90 degrees to 0 degrees of extension, with pain noted on flexion and extension. There was evidence of pain on weight-bearing and tenderness upon palpation to the anterior knee joint related to inflammation. There was no evidence of crepitus. The Veteran was unable to perform repetitive use testing on either knee. The examiner found that both knees caused disturbance of locomotion and interference with standing, with the right knee also causing swelling and interference with sitting. There was reduced muscle strength in the right knee, rated at 4/5. There was no indication of ankylosis, no history of recurrent subluxation, lateral instability, or effusion. The Veteran reported using a brace regularly, and the constant use of a cane. 

The Veteran was most recently afforded a VA examination in March 2017. The Veteran continued to report bilateral knee pain, right worse than left. The Veteran reported having flare ups, with symptoms such as frequent swelling and having to take meloxicam and Tylenol, along with use of ice and rest to treat his right knee. The Veteran reported that he was limited in his abilities to run and play any sports. Range of motion of the right knee was found to have flexion of 0 to 30 degrees and extension of 30 to 0 degrees, with the range of motion limiting him from bending his knee to sit, squat, or lift. There was pain on both flexion and extension and in weight-bearing. There was tenderness or pain on palpation along the joint line, with evidence of crepitus. Range of motion of the left knee was found to have flexion of 0 to 120 degrees and extension of 120 to 0 degrees, with pain on flexion. There was evidence of pain in weight-bearing, and tenderness or pain upon palpation along the joint line, as well as crepitus. The Veteran was not able to perform repetitive use testing on his right knee, whereas repetitive use testing of the left was able to be performed and found not to additionally limit functional loss or range of motion. Both knees were tested after repetitive use over time, but the examiner noted that the examination was not performed during a flare-up, and that any opinion on decrease of range of motion during a flare-up would be speculative as the examiner/medical provider/Veteran had not been present during a flare-up and objectively and repetitively measured the change in range of motion with a goniometer. The examiner noted muscle weakness and atrophy due to the Veteran's right thigh lateral hamstring injury and right knee scarring due to surgery. The examiner found that there was no joint instability but that the Veteran's right knee meniscus condition caused frequent episodes of joint pain and effusion. The examiner did not note locking as a symptom. The examiner noted that the Veteran regularly used a brace and cane for his bilateral knee disability. The examiner noted that a May 2016 imaging study found bilateral degenerative changes, with multipartite or post traumatic change in the patella and ACL reconstruction in the right knee, with mild medial and no lateral or patellofemoral compartment narrowing. There was tricompartment osteophytes and minimal suprapatellar effusion. On the left knee, there was mild medial and increased moderate patellofemoral, but no medial, compartment narrowing, as well as minimal suprapatellar effusion. The examiner found that the Veteran's right knee disability caused marked limitations to prolonged walking, standing, squatting and high impact activities and that the left knee disability caused mild limitations to squatting and high impact activities. 

The Board has also reviewed the Veteran's Vocational Rehabilitation records, as well as his VA outpatient treatment records which show ongoing treatment for bilateral knee pain, including periodic injections. See, e.g., March-June 2008, March 2010, April 2014 VA treatment records.

Based on all the above evidence, the Board finds that a higher disability rating is not warranted for either the right or left knee disabilities for any period on appeal.

Regarding the Veteran's right knee, prior to February 15, 2012, the Veteran is rated at 10 percent for his knee disability. The evidence of record reflects that the Veteran's right knee disability did not result in flexion limited to 30 degrees or less, or extension limited to ten degrees or less. Therefore, a higher disability for limitation of motion cannot be assigned under Diagnostic Code 5260 or 5261. Furthermore, while he has reported subjective complaints of giving way and use of a knee brace on his right knee, there is no objective evidence of instability at his VA examinations. Therefore, a separate disability rating for instability of the right knee is not warranted under Diagnostic Code 5257. The Veteran had no ankylosis, dislocated semilunar cartilage, impairment of the tibia and fibula, or genu recurvatum, so a disability rating under those diagnostic codes is not appropriate. See 38 C.F.R. § 4.71a, Diagnostic Codes 5265, 5258, 5262, 5263.

Overall, prior to February 2012, the Veteran's right knee symptoms of pain, stiffness, swelling, subjective feelings of giving way, and loss of motion are most appropriately assigned a 10 percent disability rating under Diagnostic 5003, which rates arthritis where limitation of motion is non-compensable but there are confirmed findings such as swelling, muscle spasm, or satisfactory evidence of painful motion.

As of February 2012, there is evidence that the Veteran's flexion is limited to less than 30 degrees but not less than 15 degrees. Thus, the Veteran's disability evaluation was increased to 20 percent disability evaluation based on limitation of flexion under Diagnostic Code 5260. The evidence of record reflects that the Veteran's right knee disability did not manifest compensable limitation of extension or objective evidence of instability. Furthermore, the Veteran had no ankylosis, dislocated semilunar cartilage, impairment of the tibia and fibula, or genu recurvatum, so a disability rating under those diagnostic codes is not appropriate. See 38 C.F.R. § 4.71a, Diagnostic Codes 5265, 5258, 5262, 5263. The Board notes that the Veteran is separately rated for scarring of the right knee and a right hamstring injury, and that these issues are not before the Board.

Regarding the Veteran's left knee disability, he is rated at 10 percent for the entire period on appeal. The medical evidence of record reflects that left knee extension has not been limited to 10 degrees or flexion limited to less than 45 degrees for any period on appeal. Therefore, a compensable rating for limitation of motion cannot be assigned under Diagnostic Codes 5260 or 5261. Furthermore, while the Veteran has reported subjective complaints of giving way, there is no objective evidence of instability or recurrent subluxation. Therefore, a separate disability rating for instability of the left knee is not warranted under DC 5257. There is no evidence that the Veteran has ankylosis, dislocated semilunar cartilage, impairment of the tibia and fibula, or genu recurvatum, so a disability rating under DC 5265, 5258, 5262, and 5263 is not warranted. 

The Board therefore finds that the Veteran's left knee symptoms, including pain, stiffness, swelling, and loss of motion, are most appropriately assigned a 10 percent disability rating under Diagnostic 5003, which rates arthritis where limitation of motion is non-compensable but there are confirmed findings such as swelling, muscle spasm or satisfactory evidence of painful motion.

To the extent that the Veteran would argue that his functional loss (other than painful motion) would warrant a separate rating, the Board finds that his functional loss is already contemplated under the assignment of a diagnostic code that contemplates a joint disability (DC 5003 and DC 5260). 38 C.F.R. § 4.45 notes that joint disabilities cause functional impairment that may include: less movement than normal, more movement than normal, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity, and atrophy from disuse. The Board notes that each diagnostic code for a joint disability specifically contemplates these types of functional loss, which are factored into the assigned disability ratings for the joint disability. Here, the Board finds that these functional impairments of the Veteran's knees have been contemplated by the Veteran's assigned diagnostic codes and that assignment of a separate rating would constitute impermissible pyramiding. See 38 C.F.R. §§ 4.14, 4.40. 4.45 (2016).

In adjudicating a claim the Board has assessed the competence and credibility of the Veteran. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Washington v. Nicholson, 19 Vet. App. 362, 368-69 (2005). The Board acknowledges that the Veteran is competent to give evidence about what he observes or experiences; for example, he is competent to report that he experiences certain symptoms such as giving way of the knee. See, e.g., Layno v. Brown, 6 Vet. App. 465 (1994). The Board finds the Veteran to be credible in his reports of the symptoms he experiences. However, when the Veteran's account of his symptomatology is viewed collectively with the other medical evidence of record, the resulting disability picture is consistent with the assigned ratings. That is, the Board finds that the lack of any objective or physical evidence of instability throughout the appeal period is not consistent with a higher 20 percent rating for "moderate" instability of the knee. Bastien v. Shinseki, 599 F.3d 1301, 1306 (Fed. Cir. 2010) ("The evaluation and weighing of evidence and the drawing of appropriate inferences from it are factual determinations committed to the discretion of the fact finder."); Jackson v. Virginia, 443 U.S. 307, 319 (1979) (it is "the responsibility of the trier of fact fairly to... weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.").

In sum, the Board finds that for the reasons and bases discussed, the preponderance of the evidence is against the claims for increased ratings. There is no reasonable doubt to resolve in the Veteran's favor, and these claims must be denied. 38 C.F.R. §§ 4.3, 4.7.

Neither the Veteran nor his representative have raised any other issues regarding his bilateral knee disability, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 369-70 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).


ORDER

Entitlement to a disability rating in excess of 10 percent for service-connected status post anterior cruciate ligament reconstruction of the right knee with degenerative joint disease prior to February 15, 2012 and in excess of 20 percent as of February 15, 2012, is denied.

Entitlement to a disability rating in excess of 10 percent for service-connected degenerative arthritis of the left knee is denied. 




____________________________________________
K. PARAKKAL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs